A15-3550 Ohio Dept of Medicaid v. Sec Health Human Svc Let me ask you something about that, because one of the arguments here is that you're asking for deference with regard to CMS interpretation of the term inmate of a public institution, although that interpretation differs from the regulation, Section 435.1 of the Code of Conduct. Section 435.1.010, where CMS has already interpreted the Social Security Act, so it would seem that you're asking for deference, even though you have inconsistent interpretations you're promulgating. What would you say to that? So we don't think you even need to get to the question of Chevron deference? Well, yeah, but you are advancing an interpretation in this litigation that's contrary, because it's in your briefs and all that, which is contrary to the interpretation you've already promulgated in Regulation 435.1.0. And then you're asking for deference, notwithstanding the fact that you're advancing inconsistent interpretations. And if you're doing that purely as a litigation strategy, I think we should be able to ask you to explain that. Absolutely, Your Honor. And I will immediately then turn to the regulatory issues that Your Honor just raised, and maybe I can get back to our other points later. That's a backup position, is it not? I mean, your first position is we should follow the plain language of the statute, which I think is correct. Agreed. But if we don't, we go down to the regulations and deference, then that's okay. And to address Judge Clay's point, the Secretary does not think that her position or the way the regulation is worded is at all inconsistent with the statute. The Secretary's regulatory definition mirrors the language that Congress used. Congress talked about an inmate of a public institution. And when the Secretary defined inmate of a public institution, she said, or he I guess now, we have an acting Secretary, inmate of a public institution means a person who is living in a public institution. That's all we have for the definition. The Secretary is concerned that there's an inconsistency, and I'd like to explain why we don't believe there's any inconsistency whatsoever in the regulatory language contained in 42 CFR 435.1010. The point you just made, is that really true? Because children who have been removed from their homes pending foster care placement are eligible for Medicaid, and they're not in public institutions. Yes, Your Honor, and the regulations account for that, and define the children who are in a child care institution differently. A child care institution is not considered a public institution. Public institutions under the regulatory definitions are pretty limited, and definitely include correctional facilities and detention facilities. But to get back to what Your Honor was asking just a moment ago about 1010, and the definition contained therein with respect to the child care institution, I think it's important to note that there's a lot of differences. There's a lot of exceptions A and B. Those regulatory exceptions that the Secretary carved out deal only with people who are not inmates, and that's really important. The regulation says an individual is not considered an inmate if one of two situations exists, and then we have A and B. A says an individual in a public educational or vocational training institution is not an inmate. And as the Secretary concluded in her decision in this case, or his, being an inmate contains an element of involuntariness. Confinement or restrictions on liberty, which does not apply to those who are receiving educational or vocational training. So that was the Secretary saying why public educational or vocational training, those people are not inmates. To get to the part of the reg that's really at issue here, Part B, an individual who is in a public institution for a temporary period, pending other arrangements appropriate to his needs, likewise, that person is not an inmate. The prefatory language said that a person is not an inmate if this type of situation exists. So we don't even get to this situation in this case, because under our view, which has been upheld through the Secretary's decision and other courts who have looked at what inmates are, they conclude that inmates and detainees are the same thing. Inmates, detainees, convicts. It's a person who's confined, who can't leave the place that they're at. So once you are an inmate, you're not in this category of someone who is there for a temporary period pending other arrangements. And with respect to the one ‑‑ Well, Your Honor, I wouldn't say that it's in the regulation. I would say that it is covered by Congress's very broad definition of the term inmate. But that's your agency argument with regard to what you're requesting deference for. That's not in the Social Security Act and it's not in the regulations. Is that right? The only definition that Congress provided us is that of an inmate in a public institution. And Congress said in the broadest possible way that Medicaid, federal dollars cannot go to the care of, quote, any individual who is an inmate of a public institution. And Congress didn't distinguish between inmates who are detained or sentenced. It didn't differentiate between adults and juveniles. So long as the person has the status of an inmate, Congress says that federal financial participation cannot be applied to his medical care. With that sole exception that counsel recognized is in the statute, which is for a patient who is in a medical institution. With respect to trying to get back to Your Honor's question about Part B, and counsel's point about the temporary nature of this, in the Secretary's interpretation, inmates are not defined by the nature of having a temporary stay. Rather, it's non-inmates who are defined this way. And in the regulatory guidance, the Secretary and the agency provided some examples of what might be a situation where an inmate is in a public institution pending other arrangements and they're there for a temporary period. And that is, for instance, there's a natural disaster, someone has no other place to seek refuge, they might seek refuge in a public institution. They're not inmates. They can leave. But they, naturally, because they're in a public institution, they would still be able, we want to make sure it's clear that they're not inmates, so that they can receive their Medicaid matching dollars if necessary. But for inmates, as Judge Guy's question indicated, I think that it is the responsibility of the state to provide for the care of its inmates and its detainees. And I don't think that counsel is really arguing that if the parents are unable to pay, that the state does not have responsibility. I think the constitutional protections that are in place under the 8th and 14th Amendments would clearly require the state to do that, or the county government. And certainly the fact that costs have been shifted by the state to parents who can pay doesn't really change anything. With respect to what counsel was raising regarding voluntariness, as not being in the statute, the secretary believes this is really a distraction. The word inmate is what is in the statute, and given that word, its ordinary meaning, that someone who is confined, whether it be a detainee or a sentenced person, that is what drives the analysis in this case. And we believe that Congress's statutory definition of inmate is so broad that juveniles must be included and detainees must be included. The state's reply brief noted that the juvenile justice system has changed over time to afford juveniles the same constitutional protections as adults, but this fact doesn't have any bearing on whether Medicaid inmate exclusion encompasses juveniles. And if anything, the state's point actually supports that juveniles and adults should be treated the same. Again, we believe that the definition is very broad, it is inclusive, it is unambiguous, but if the court concludes that there is an ambiguity as to what an inmate is and whether inmates do indeed include detainees, then Chevron deference should be accorded to the secretary's interpretation. Congress delegated the authority to the secretary to make sure that Medicaid state plans comport with state law, and as noted in our brief, cases across the country, including this court in Harris v. Olszewski, recognize that Chevron deference applies to the secretary's case-by-case adjudication of Medicaid state plan amendments. Well, why would you be entitled to Chevron deference? Aren't we talking about differences in the definition of inmate? Interpretation of the pertinent regulations and Chevron deference would apply to statutes? There's not a problem with trying to decipher or clarify the statute with regard to which Chevron deference might be appropriate. It wouldn't come into play in this situation, would it? Your Honor, we believe that you don't even need to get to the regulatory exceptions in this case to the definition of what an inmate is, and so if you're only looking at the statute, yes, Chevron deference applies. If you're looking at the secretary's regulations... Thank you, Your Honor. Well, we would argue Chevron deference is warranted under the secretary's interpretation of the statute. With respect to the regulatory materials, first, we really believe that the regulation is not ambiguous, that the situation that counsel identified with Section B and trying to fit inmate juveniles into that exception of the inmate definition just doesn't make any sense. People who fit into that exception are not supposed to be inmates. If they need some kind of arrangements appropriate to their needs, it might require an assessment of where to go, what kind of foster care, something of that nature. We're not talking about the public need to determine whether someone is guilty or innocent or the public need to incarcerate someone. That regulatory definition deals with... Are people who are voluntarily in detention, that the regulations apply only to people who are voluntarily in detention since you've premised your argument on whether people are voluntarily in state institutions? Yes, Your Honor. I don't know that I'd agree that that's exactly how we premised our argument, but certainly we do believe that people who are voluntarily in detention, that anyone who is not an inmate of a public institution but is living in that public institution is eligible and could have federal Medicaid dollars applied to their medical care. And we believe that the... Okay. And I don't want to rehash things we may have already talked about, but where does the voluntariness requirement come from since it is not in the statute? It's not in the Social Security Act and it's not in the CMS regulations? Your Honor, the voluntariness to the extent... I mean, I know that's what the state is arguing as our position, but that's... Well, no, you came up with this voluntariness terminology. That didn't come from the state. Since you came up with it, I would think you'd know where you got it from. Well, it's from the definition of inmate, Your Honor, and we believe that is a reasonable interpretation of the word inmate, that someone who is an inmate is someone who is confined. You mean from the dictionary or something like that because it's not in the regulations, it's not in the statute? Your Honor, that was the... It's not apparent where you got it from. Well, Your Honor, we believe that it is a reasonable definition. It is a dictionary definition. We pointed to that in our administrative brief. And in our administrative brief, we also cited the U.S. Supreme Court's decision in the Rufo case where they treat detainees like... They just used the term inmate to refer to pretrial detainees. So the Secretary simply used a well-established way to refer to a detainee as an inmate. And that is our interpretation of the statute, which we believe warrants Chevron deference. Our regulations would warrant our deference. And if I may just briefly sum up, it bears noting... Very briefly because your light has been on for a little while now. I apologize, Your Honor. May I? Yes, go ahead. It bears noting that if accepted, Ohio's position would logically entail that the state's care for adult detainees would also qualify for federal... That's exactly my question. I was going to wait to ask the Ohio attorney because it seemed like the logic that they used that juvenile detainees awaiting adjudication of their criminal cases are not inmates of a public institution would apply to adults as well as juveniles. I mean, is there anything special about... They're only requesting Medicaid coverage for juveniles, but the logic would apply to adults as well. Yes, Your Honor. And we believe that's a serious problem. A real serious problem. And that would work a radical change in the Medicaid program and shift potentially enormous costs from the states to the federal government, which Congress never intended the federal government to bear. It's quite clear that Congress didn't intend that, but the logic would seem to apply to adult detainees as well. So those are questions for the other side, I guess. But I totally agree with you. I think that's a big problem here. Thank you, Your Honor. And it's also noteworthy that no other state has sought to amend its plan in the way that Ohio has. What happened to Maryland then? That did not involve a state plan amendment. And actually, if you look at footnote seven of that Brown decision, the court acknowledged that the time for the state to have sought federal reimbursement dollars had lapsed. So that question was never even presented. Maryland is just like every other state in the union, and FFP is not available for any inmate, including a juvenile detainee. This would be a first in the country. Is that clear, that the statute provides that there should be reimbursement? It's odd that no other state has come up with the argument until today, I suppose. And Ohio's proposed change was only recently asserted, and this underscores the fact, in our view, that the Secretary's policy has been settled and has been accepted by the Secretary's state partners for literally decades. Because the Secretary's position is consistent with the statute, regulatory text, and settled agency practice, and we were not asked to amend it. We're not asking for any particular type of deference for those agency materials. I think the courts have recognized those are case-by-case determinations as to what kind of deference applies. But here we think Chevron and Auer apply to the statute and should apply to the statute and the regs. For all these reasons, we ask the Secretary's decision be affirmed. Thank you. Any rebuttal? There's a little bit of confusion here, sort of a logical bait-and-switch that's going on with CMS's argument. What they keep saying in their decision below and in their brief and their argument here is that it has always interpreted the exclusion on federal matching funds to apply to inmates. And inmates don't get federal matching funds. Inmates of public institutions is the statutory language, right? That's right. And that's what we are going to enforce, by the way. And the state agrees. Inmates don't get federal matching funds. So logically your argument would apply to adult detainees awaiting adjudication of their cases, would it not? The force of logic would apply to adults, too. All right. Do you think that's what the statute intended? I don't know. There may be some other issue that we haven't uncovered, additional policy concerns, et cetera. Oh, wow. That would be a major shift in the funding if Medicaid is going to cover adult detainees awaiting adjudication. And that's what you say that logically your position is. Of course, if Medicaid wants to avoid that result, all it needs to do is write rules like it wrote in the check provisions. Well, we're dealing with the statute first. And isn't it odd that the statute's been on the books for decades, that no one has read that statute the way you've read it? No, Your Honor. I respectfully disagree. We're not dealing with the statute.  Does the language does not include funding of indemates of public institutions? Is that statutory or is that regulation? That's statutory. Okay, I thought it was. But we are dealing with the statute first, and then regulation second, and then maybe interpretations of the regs third, and an issue of priority. And as other counsel said, you only go past the plain language of the statute if there's ambiguity or this or that. I, for one, am a textualist. I apply the text of the statute, and that's what I'm going to do in this case. So let's apply the text of the statute. It says no FFP for inmates of a public institution, right? And then the agency has defined that phrase, inmates of a public institution, in its regulations. And then it says you're not even an inmate if you meet these requirements. It's temporary and pending other arrangements appropriate to your needs. And CMS says don't go there. Don't look at that. You don't. These people are pending the criminal charges against them, even though they're juveniles. They're not pending other arrangements. They're pending the adjudication of the criminal charges, right? Which will result in other arrangements appropriate to your needs. Yeah. It may be in prison in the state of Ohio. It may be supervised release. Who knows what it's going to be, but it's going to be a criminal adjudication of the juveniles. Well, it'll be a juvenile adjudication. A juvenile criminal adjudication, whatever they call it in Ohio. But again, the issue here, which CMS still hasn't explained, they haven't explained why these individuals are not being held temporarily, pending other arrangements appropriate to their needs. They're being held pending adjudication of the criminal charges in juvenile court. CMS has never argued in its brief, and they've waived that argument, that these children are being held pending other arrangements appropriate to their needs. They haven't made that argument in their briefs, and the administrative decision below hasn't made that argument. And they don't dispute that the covered children, in this case, meet both of those requirements. And they also don't dispute, well, I'm sorry, if you meet both of those requirements under the plain language of the regulation, then you are in fact not an inmate, which takes you out of that statutory term. As far as inmates and detainees being the same thing, they're absolutely not the same thing. Numerous courts have recognized that pretrial detention is temporary. All sorts of things change once you become adjudicated or once you become convicted. The changes in time in the juvenile justice system, the state included that argument in there because CMS said, hey, look, the statute doesn't distinguish between juveniles and adults. And we said, that's right, that's probably, you shouldn't read into that the fact that they meant to treat them the same. You should, it's just as likely you should read into that the fact that everybody realized that in 1965 when the statute was drafted, those two populations were entirely different. So you didn't need to say cats and not dogs because everyone understood that cats and dogs, i.e., the two populations were different. We don't have any Chevron difference here because what we're dealing with is the scope of this regulatory exception to what it means to be an inmate of a public institution. If there are no further questions, we respectfully request that the Court reverse CMS's decision. Thank you. Are there any further questions, Judge Guy? No, I don't. Thank you. All right. The case is submitted. And with that, there being no further cases for argument, the Court may be adjourned.